SARTAIN, Judge.
This is an action for personal injuries and special damages which resulted from an automobile-bicycle collision. The suit was instituted by the natural tutrix of the minor, Betty Jo Amacker, age 11, who was riding her bicycle at the time of the accident. The defendant, Edgar W. Kirby’s vehicle struck the child’s bicycle as the latter turned right in front of the vehicle. The trial judge held that the doctrine of last chance was applicable in that Mr. Kirby failed to observe the child at a time he should have which would have enabled him to bring his car under control and to have stopped before colliding with the child. For reasons hereinafter stated we are of the opinion that the application of the doctrine of last clear chance to the facts in the instant matter is erroneous and that the judgment of the trial court should be reversed.
*19 Much of the facts surrounding this case are not in dispute. Both Mr. Kirby and Betty Jo Amacker were proceeding in a westerly direction on Evangeline Street. Evangeline Street near the scene of the accident is asphalt and twenty feet in width, ten for each direction of traffic. It is bordered by a shoulder of three to four feet. Grass on the shoulder grows right up to the edge of the asphalt. In some spots, however, there is some gravel. The pertinent intersections to Evangeline Street are West Brookstown Drive and Annette Street. West Brookstown Drive runs in a north-south direction and “T” intersects with Evangeline Street from the south. Annette Street also runs in a north-south direction and “T” intersects with Evangeline Street from the north. The distance between the center lines of West Brooks-town Drive and Annette Street is 203 feet.
Just prior to the accident Betty Jo Amacker was traveling west along the south edge of Evangeline Street and Mr. Kirby was traveling west in the north lane for westbound traffic and overtook the cyclist. The accident occurred when Betty Jo Amacker endeavored to make a right turn from the south side of Evangeline Street to cross Mr. Kirby’s lane, and to proceed north on Annette Street. The point of impact was located six feet south of the north parallel line of Evangeline Street, fourteen feet north of the south parallel line of Evangeline Street, and two feet east of the west parallel line of Annette Street.
The accident occurred on October 22, 1964 at about 3:10 P.M. The weather was good. The streets were dry.
The police officer who investigated the accident found that the right tires of the Kirby vehicle left forty-eight feet of skid marks prior to the point of impact and all four wheels left eighteen feet of skid marks after the point of impact. ' Photographs taken at the scene of the accident reveal that the Kirby vehicle came to rest with its left front bumper still in contact with the bicycle and with its rear wheels just a few feet west of the west parallel line of Annette Street. The officer testified that he found no evidence of excessive speed on the part of the defendant.
Betty Jo Amacker, age 11 years and 1 month at the time of the accident, was in the sixth grade and attending East Brooks-town Elementary School. The school is located approximately four blocks from the scene of the accident. She stated that she left the school at about 3:00 o’clock, proceeded west on Clayton Street, turned to her right on West Brookstown Drive and traveled north for a distance of two blocks to Evangeline Street. She then turned left onto Evangeline Street and was proceeding in a westerly direction along the south edge of Evangeline Street. She stated that when she turned left from Brookstown Drive onto Evangeline Street she looked back to her right (east) and observed a white vehicle (Kirby) that was “pretty far back”. She explained that the first knowledge she had of impending danger to herself was after she had commenced to make her right turn to north on Annette Street when she heard the Kirby vehicle as its tires began to skid. In response to a question as to whether or not she knew the car was behind her and whether or not she looked again to her rear before turning right, she stated that she did know that the car was behind her but that she “did not look again because I guess I thought the car was still back there and it wouldn’t hit me”. She stated further that she had her bicycle under control at all times even though she was holding three books in her left hand and steering with her right.
Mr. Kirby testified that he was proceeding west on Evangeline Street and had initially slowed down for an intersection of this street with East Brookstown Drive, some 1600 feet east of the scene of the accident, where there was a school crossing attendant. He testified that he was traveling at approximately thirty miles per hour and did not observe the Amacker child until she had commenced her right turn ma *20 neuver to go north on Annette Street. He immediately applied his brakes but stated that he was unable to avoid striking the youth and the bicycle.
Plaintiff called two witnesses, Messrs. John W. Chaney and Leroy W. Wheat, Jr. These witnesses were riding in Mr. Chaney’s vehicle and were traveling east on Evangeline Street and were west of the point of collision when the accident occurred.
Mr. Chaney stated that the first knowledge he had of the accident was when he saw the bicycle and the vehicle collide. He stated:
“* * * I could see the car but I couldn’t see the car hit the little girl, but I saw her, when I noticed her, in other words, it looked like the bicycle was going down and I was meeting the car that struck the bicycle and it was a little girl.”
He estimated that he was 100 to ISO yards from the intersection of Evangeline and Annette Streets when the accident occurred. This witness further stated that he remembered seeing children along the street and he would “guesstimate” possible fifteen to twenty children, were in the area. His recollection was that these children were on the south side of Evangeline. He did not recall seeing any children on the north side.
Mr. Wheat testified that the Amacker child was not over ten feet away from a group of school children. He estimated that there were eight in the group. He stated that when he observed the accident he and Mr. Chaney were 80 to 100 feet east of the scene. However, Mr. Wheat’s testimony was to the effect that the children were on the north side of Evangeline Street and that the Amacker child was coming out o.f Annette onto Evangeline Street. On this point he stated, “I believe this is the way it happened. The little girl came out onto the street, the gentleman (Kirby) immediately applied his brakes and could not stop quick enough.”
A Mrs. Betty Zucarello testified that she was parked in the front of a t.v. shop which is located on the northeast corner of the intersection of Evangeline and Annette. She was first aware of an impending accident when she heard the Kirby vehicle skidding. As she looked out she simultaneously saw the Kirby vehicle and the child. The latter was crossing Evangeline from south to north. This witness did not recall seeing any other children in the vicinity.
Mr. Alvin Doyle, Jr., who was admitted as an expert relative to the stopping and braking of vehicles, testified that the fifty-six feet of skid marks left by the Kirby vehicle indicated a speed to him of 33 miles per hour with a tolerance of 10%. On cross examination he admitted minimum and maximum speeds of Mr. Kirby to be 27 to 35 miles per hour respectively. This is in accordance with the trial judge’s findings of fact because the trial judge stated in his written reasons for judgment that the evidence was insufficient for the court to hold that Mr. Kirby was exceeding the speed limit of 30 miles per hour.
A considerable portion of the testimony and the attention of counsel for both parties pertain to the degree of control exercised by Betty Jo Amacker over her bicycle just prior to the accident. Counsel for plaintiff urges that because of the asphalt patches and the roughness of the shoulder of the street plus the fact that the child was driving with one hand while carrying school books in the other indicate that her bicycle was wobbling. Counsel contends that if Mr. Kirby had been exercising proper care under the circumstances, he should have observed the wobbling of the bicycle and brought his own vehicle under such control so as to enable him to stop in time to avoid the accident.
Mr. Kirby testified that he observed the bicycle wobbling but it was as the child made her right turn directly into his path of travel. On this particular point the child’s testimony is very clear to the effect that she had her bicycle under control and *21 that it was not any lack of control that caused her to veer into the path of the overtaking vehicle. It was her deliberate intention to turn right to go north on Annette Street which placed her in the path of the Kirby vehicle.
The record does not support the conclusion that other children were in the immediate vicinity of the accident. Betty Jo Amacker observed none, Mrs. Zucarello observed none, Mr. Chaney placed the children on the south side of the road, and Mr. Wheat placed the children on the north side of the road.
Under the enumerated facts the trial judge held that Mr. Kirby should have seen the Amacker child long before he did and his failure to do so constituted negligence on his part. In applying the doctrine of last clear chance the judge a quo also held that the Amacker child was negligent in making the maneuver that she did.
There are several well established rules of law which are particularly applicable here. A motorist is held to a high degree of care when the presence of children near a thoroughfare is known to or observed by him or if not observed could have been through proper diligence. Also, an 11 year old child, possessed of normal intelligence, and in her regular grade in school, has reached a point in age, growth and judgment which subject the child’s actions to the scrutiny of a charge of contributory negligence.
In cases involving injury to children on or near a public thoroughfare the facts of each case dictate its outcome. In certain instances the courts have held that there was no negligence on the part of the driver. White v. Hanover Ins. Co., 201 So.2d 201 (1st La.App., 1967); Ardoin v. State Farm Mutual Automobile Ins. Co., 205 So.2d 632 (3d La.App., 1967); Bryan v. Durr, 209 So.2d 548 (4th La.App., 1968); Glynn v. Duvernay, 217 So.2d 787 (4th La.App., 1969). The drivers in these cases were absolved of liability because the actions of the youths involved were so sudden and abrupt that they precluded any evasive action on the part of the motorists.
In other instances the youths were found contributorily negligent and recovery on their behalf was denied. Beillon v. Muffoletto, 77 So.2d 118 (1st La.App., 1954); Lawrence v. Core, 132 So.2d 82 (3d La.App., 1961); Cormier v. Sinegal, 180 So.2d 567 (3d La.App., 1965); White v. Hanover Ins. Co., supra.
In other cases the negligence of both the motorist and the youth was recognized but the motorist was held to have had the last clear chance to avoid the accident and recovery was permitted. Haywood v. Fidelity Mutual Ins. Co., 47 So.2d 59 (1st La.App., 1950); Biggs v. Verbois, 151 So.2d 172 (1st La.App., 1963, writs refused); Ingram v. McCorkle, 121 So.2d 303 (1st La.App., 1960); Tate v. Hill, 197 So.2d 107 (1st La.App., 1967, writs refused); Price v. Watts, 215 So.2d 187 (3d La.App., 1968). Two important factors are noticeably present in each of these cases. The drivers were held to have either seen or should have seen the perilous position of the youths and the youths’ movements were such as to clearly indicate a perilous situation.
Accepting the trial judge’s findings of fact that both young Betty Jo Amacker and Mr. Kirby were guilty of negligence, the former for turning directly into the path of the latter and Mr. Kirby for not observing the child sooner, we do not find that the doctrine of last clear chance or discovered peril is applicable in the instant matter. The negligence of Mr. Kirby is limited to his failure to see the child prior to her sudden movement into his path. However, the inescapable fact remains that had he seen her sooner he would have observed her in a position of safety, proceeding along the south side of Evangeline Street. To hold otherwise would require an assumption that is not warranted by the facts presented in this case. Immediately prior to the accident, Mr. Kirby was driving at a reasonable rate of speed and after *22 the accident was able to bring his vehicle to a complete stop within eighteen feet of the point of impact. The accident occurred four feet north of the center line of Evangeline Street and in Mr. Kirby’s lane of traffic. While we recognize the high degree of care placed upon Mr. Kirby to observe the child it begs the question to simply say that such observation would have prevented the accident.
The jurisprudence of this state is well settled to the effect that to warrant the application of the doctrine of last clear chance three factors must be established by the person seeking to avoid the brand of contributory negligence. These factors were stated by us in Tate v. Hill, supra, wherein we quoted from Jones v. Dozier, 160 So.2d 395, 398 (1st La.App.) as follows:
“First plaintiff must establish that he was in a position of peril of which he was unaware or from which he was unable to extricate himself. Secondly, plaintiff must show that defendant was in a position to discover plaintiff’s peril upon the exercise of reasonable care, caution and observation. Finally, plaintiff must establish that when defendant discovered plaintiff’s peril, defendant was possessed of a reasonable opportunity to avoid the accident. McCallum v. Adkerson, La.App., 126 So.2d 835; Whitner v. Scott, La.App., 116 So.2d 180; Newton v. Pacillo, La.App., 111 So.2d 895.”
In applying this formula to the facts in the instant case we find that the plaintiff has failed to establish that Betty Jo Amacker was in a position of peril prior to the time she made her sudden right turn. Secondly, plaintiff has failed to show any action on the part of Betty Jo Amacker that would have indicated impending danger that would have placed an added duty on Kirby to anticipate the child’s sudden maneuver. By the child’s own admission she had her bicycle under complete control, knew the Kirby vehicle was behind her, and evidenced no other action that would have been indicative of any movement from a position of safety to one of danger.
Accordingly, for the above and foregoing reasons the judgment of the district court is reversed and set aside and judgment is rendered herein in favor of the defendants dismissing plaintiff’s suit at her costs.
Reversed.